UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DON R. BUDD,

        Plaintiff,                  Case No. 1:19-cv-466

v.                                        Hon. Paul L. Maloney

SUMMIT POINTE,
SUMMIT POINTE SOUTH,
BATTLE CREEK HEALTH SYSTEMS,
FIELDSTONE CENTER, and
UNKNOWN PARTIES 1-100,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Don R. Budd filed this action against Summit Pointe, Summit Pointe South, Battle Creek Health Systems ("BCHS"), Fieldstone Center ("Fieldstone"), and 100 unknown or "Doe" defendants. *See* Compl. (ECF No. 1). In his complaint, plaintiff stated that he is deaf (requiring a sign interpreter), was wrongly diagnosed with schizophrenia, has been correctly diagnosed with Tardive Dyskninesia (Akethasia), was abducted, was falsely imprisoned, and subject to medical malpractice. *Id.* at PageID.6. Plaintiff alleged that defendants violated his rights under two federal statutes, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12182, and the Rehabilitation Act (RA or "Section 504"), 29 U.S.C. § 794. *Id.* at PageID.1. Plaintiff has included supplemental state law claims for discrimination under the Michigan Persons with Disabilities Civil Rights Act (PWDCRA), M.C.L. § 37.1101 *et seq.*, medical malpractice, and false imprisonment.

This matter is now before the Court on defendants BCHS and Fieldstone's "Motion for summary judgment in lieu of answer to the complaint" (ECF No. 11).[1] This report will also address the sufficiency of plaintiff's federal claims under 28 U.S.C. § 1915(e)(2)(B)(ii).

## I.     Background

### A.     Allegations

Plaintiff's complaint is set out in a narrative form. Plaintiff begins his complaint by identifying himself as deaf, noting that the U.S. Secret Service threatened him, and asking that the Court protect him and apparently secret his technology that he has developed:

> Here comes the Plaintiff, Don R. Budd in Pro Se, not of free will but out of necessity, since discrimination also extends to law offices in the District of Michigan. None will accept a Deaf client. The only ADA Attorney in Battle Creek claims they fight the ADA, not enforce it. Disability Rights Groups all tell me my issues are not worth their resources and therefore, will not take my complaints.
>
> Because of the issues raised in the Case Background Section of this complaint, the problems cannot be decided by a Magistrate or Arbiter. The US Secret Service's threat of "Must be found Mentally Ill or deemed a Terrorist" cannot resolve by a lower level judge or arbiter.
>
> Please, assign to the District Judge with authority to resolve such issues and place the Plaintiff under the Court's protection should it deem necessary to protect the Plaintiff and technology from government seizure.

Compl. (ECF No. 1, PageID.2).

According to plaintiff, the events giving rise to this lawsuit began in the wake of the September 11, 2001, terrorist attacks, when plaintiff provided President George W. Bush with "technology summaries" containing ideas on how to keep Americans safe. Compl. (ECF No. 1, PageID.3.) Within two weeks of providing the President these undisclosed items, plaintiff returned to his home in Reno, Nevada, to find a "Soldier in Summer uniform" climbing out of his bedroom

---

[1] This was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B).

window. *Id.* Although he was unable to confront the "solider," plaintiff later determined that the soldier had "installed a backdoor" on plaintiff's computer which he traced to I.B.M. and later to the U.S. Naval Research Laboratory.

Plaintiff contends that government surveillance of him continued after he moved to Battle Creek, Michigan in July 2003. *Id.* Plaintiff realized this when he spotted unspecified government vehicles "hanging around" his home. *Id.* Plaintiff reported the vehicles to the Emmett Township Police who came to his house accompanied by non-party Michael Cupp, who claimed to be "an IT Specialist." *Id.* The officer ordered plaintiff to show Cupp one of his secret technology projects, and then performed an illegal search of plaintiff's house, including his cabinets, refrigerator, and other things. *Id.* Plaintiff claims that IT Specialist Cupp later became a Psychologist for Summit Pointe South, a mental health facility in Battle Creek, where plaintiff has received treatment. PageID.4.

A few years later, on or about May 12, 2006, non-party Officer Rugg of the Emmett Township Police took plaintiff without an explanation or interpreter to BCHS (now doing business as Bronson Healthcare Group"), and later to the "local Mental Hospital" Fieldstone Center (now doing business as Bronson Behavioral Health Services). *Id.* Plaintiff was seen by non-party Dr. Georgina Srinivas Rao, identified as a person "of Middle Eastern descent." *Id.* At that time, plaintiff was advised that he was being evaluated for mental illness "based on the officer's note that I spent more money on technical texts than on food." *Id.*

On or about June 1, 2006, plaintiff had a second interview with Dr. Rao at Summit Pointe South. *Id.*[2] At that time plaintiff "still was not informed about what was going on other

---

[2] The Court notes that in a brief related to a different motion, defendant Summit Pointe states that its proper name is the Calhoun County Community Mental Health Authority, and that defendant "Summit Pointe South" is not a legal entity, but an office location. *See* Amended Brief (ECF No. 17, PageID.116).

than the officer claimed I spent too much on books and not enough on food." *Id*. Dr. Rao spoke with plaintiff's brother who "was brought into the scheme that was to play out." *Id*. After this interview, plaintiff learned that his home had been "bugged, wiretapped, and cameras installed. . . All, of course, was denied." *Id*.

In early June 2006, "Secret Service man 'Jason'" came from the Grand Rapids Office to speak with plaintiff through a sign language interpreter. *Id*. The interpreter explained to plaintiff "that someone from Washington, DC claimed to have received a threat against the President from me" and this person stated that "I must either be found mentally insane, or I will be deemed a terrorist and be taken to an unknown location for the rest of my life." *Id*.

On June 28, 2006, plaintiff's brother and others led him to a pond in the woods. *Id*. at PageID.5. Plaintiff continued:

> On or about June 28, 2006, under threat that I would be deemed a terrorist and vanish if I did not play along with the scheme, Cupp had me get into the pond and wade. When he was done, I was told to go back. On the way, I met 5 men all wearing red polo shirts with the words "Renaissance Faire." The Faire was in the area at the time. They told me I was to be taken to Vandenburg AFB in California where I would live out my life in prison.
>
> The Emmett Township Police arrived with 2 officers, one was Officer Rugg and the other was unnamed. They took me in the rescue ambulance and started to threaten me. I had to keep my feet in a prescribed manner, or I would be "Castrated." The threats continued all the way to the main hospital.
>
> There I was ordered to dress in a hospital gown and keep my feet as prescribed. Most, I could not understand. There was never any interpreter. I was threatened repeatedly by staff, who later belonged to Fieldstone Center.
>
> Finally, before I was transferred to Fieldstone Center, a doctor, who I could not make out the name, handed me only the signature page and she pointed to the place to sign. I was not allowed to read the document. I was threatened more to sign. I signed the document under duress and threat of death. The document must be deemed null and void.

*Id*. at PageID.5.

4

Plaintiff's complaint also includes some allegations regarding a few interactions with staff at Summit Pointe and Summit Pointe South in 2018 and 2019. *Id*. at PageID.7-11. The interactions included requesting a letter from Dr. Gandy. *Id*. at PageID.8-9. Given this background, plaintiff's complaint includes five claims ("issues") against defendants.

### B. Plaintiff's claims

Plaintiff has set forth four groups of claims: federal claims against defendants which occurred in 2006; state law claims against defendants which occurred in 2006; state law claims involving non-party Dr. Gandy which occurred in 2006; and, federal claims involving defendants Summit Pointe and Summit Pointe South which occurred in 2018 and 2019.

#### 1. Federal and State statutory claims

Plaintiff has alleged three statutory claims: Issue 1 (violation of the ADA); Issue 2 (violation of the RA); and Issue 3 (violation of the PWDCRA). *Id*. PageID.6-10. These claims arose from treatment in 2006 when plaintiff was "falsely imprisoned in the mental hospital," "subjected to several diagnostic tests, of which none showed any sign of Schizophrenia," "a very unnerving reaction to the Risperdal," and lack of accommodations for hearing impaired patients. *Id*. at PageID.7. Plaintiff recognizes that these alleged events occurred years ago, but states that "[A]fter 13 years of being on notice, the Defendants have continued to fail to provide accommodations at every appointment. They only provide interpreters occasionally." *Id*. at PageID.8.

More recently, plaintiff alleged: that he asked for a sign interpreter at Summit Pointe or Summit Pointe South (October 30, 2018); that he asked for letter from Dr. Gandy (October 31, 2018); that Summit Pointe South told plaintiff that "there was a problem" with a

requested document (November 7, 2018); and that he did not receive a letter from Dr. Gandy until February 28, 2019, because Summit Pointe staff had problems contacting him. *Id*. at PageID.8-9.

### 2.     Non-party Dr. Gandy's medical malpractice in 2006

In Issue 4 (medical malpractice), plaintiff alleged that on December 28, 2018, he gave notice of Dr. Gandy's 2006 malpractice. *Id*. at PageID.10-11. Although he gave notice more than a decade after the alleged malpractice, plaintiff apparently contends that the notice for medical malpractice was timely because he does not have the luxury of legal counsel, he must do all of the work himself, and that it took him time to find the applicable laws. *Id*. at PageID.10. The alleged malpractice apparently involves the incorrect diagnosis of paranoid schizophrenia and the infliction of Tardive Dyskinesia as a side effect of antipsychotic drugs. *Id*. at PageID.11-13.

### 5.     False or wrongful imprisonment in 2006

In Issue 5 (false/wrongful imprisonment), plaintiff alleged false imprisonment because Dr. Cupp forced him to sign a document under duress and he was illegally confined at the mental hospital (defendant Fieldstone) for 20 days commencing on June 28, 2006. *Id*. at PageID.15-16.

### 6.     Plaintiff's claims for relief

It appears that plaintiff seeks in excess of $300,000,000.00 in compensatory and punitive damages against defendants ("78,722,033.16 per defendant through 2019"). *Id*. at PageID.18-21. For his "non-monetary" relief, plaintiff wants defendants to make numerous accommodations for the deaf and hearing impaired, and report compliance to both him and the Court. *Id*. at PageID.21-26. Plaintiff also asks for significant non-monetary relief unrelated to the alleged claims, which this Court will address in § II, *infra*.

## II.  Subject matter jurisdiction

Plaintiff alleged that this Court has jurisdiction pursuant to 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id*. (internal citations omitted). It is well-established that this Court has a duty to read a *pro se* plaintiff's complaint indulgently. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Kent v. Johnson*, 821 F. 2d 1220, 1223-24 (6th Cir. 1987). However, while *pro se* pleadings are to be liberally construed, "this court is not required to conjure up unpled allegations." *Dietz v. Sanders*, 100 Fed. Appx. 334, 338 (6th Cir. 2004). A district court may dismiss a complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) at any time "when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).

While plaintiff's lawsuit ostensibly seeks relief against defendants for failing to accommodate his hearing impairment under the ADA and the RA, the vast majority of plaintiff's claims arise from events which allegedly occurred over a decade ago. It appears that a main purpose, if not the main purpose, of plaintiff's lawsuit is to have this Court enter orders to validate his claim of a government scheme to have him declared mentally insane, to place him under surveillance, and to interfere with his development of technology. Specifically, in addition to requesting hundreds of millions of dollars in damages:

> [T]he Plaintiff requests that he be declared mentally sane without Paranoid Schizophrenia and not a Terrorist. The Plaintiff also seeks the protection of himself and all assets from all Federal and State/Local agencies who may now try to kidnap or steal the Plaintiff's assets or technologies under the color of the FISA Laws or FISA Court Orders. The Plaintiff also requests orders to block any attempt to wiretap phones or internet connections (including blocking internet service) or email addresses or any other electronic surveillance methods, including his home and vehicle.
>
> The Plaintiff must be free and safe to develop his technologies without Federal, State, or Local interference or threat.

Compl. at PageID.26.

Although plaintiff clearly, and regrettably, suffers from mental health challenges, this Court should not spend its limited resources addressing and entertaining plaintiff's fantastical claims. While plaintiff's complaint ostensibly seeks relief under the ADA and RA, plaintiff is attempting to use this lawsuit as a vehicle to obtain a court order: to declare that he is mentally sane; to declare that he is not a paranoid schizophrenic; to declare that he is not a terrorist; to protect him from kidnapping, and to protect him from federal, state or local interference with his development of technologies. Plaintiff's request for this relief is totally implausible, frivolous and devoid of merit. *Apple*, 183 F.3d at 479. For this reason alone, plaintiff's complaint should be dismissed for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).[3]

---

[3] The Court rejected plaintiff's proposed amended complaint ("Complaint Rewrite") (ECF No. 29-1) because he did not file a motion to amend. *See* Order (ECF No. 29). This proposed amended complaint included most of his original allegations in 181 numbered paragraphs. While the proposed amended complaint removed the malpractice claim, it included the request for non-monetary relief related to the government conspiracy (*e.g.*, declare that plaintiff is sane, declare that plaintiff does not have paranoid schizophrenia, block surveillance of plaintiff, block federal, state, and local interference with his development of technology, etc.).

### III.     Defendants' Motion for summary judgment

### A.      Legal standard

Defendants BCHS and Fieldstone have moved for summary judgment on plaintiff's federal and state law claims arising in 2006.[4]  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, the Court

---

[4] Although defendants' motion seeks summary judgment, their brief includes the legal standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) (ECF No. 11, PageID.55-56).

is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B.     Discussion

#### 1.     Federal claims under the ADA and RA arising in 2006

Plaintiff alleged that defendants violated the ADA and RA by failing to accommodate his disability. Title III of the ADA provides that, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The RA protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

Defendants contend that plaintiff's claims under the ADA and RA are untimely. "Neither § 1983, the ADA, nor the Rehabilitation Act provides a statute of limitations, so courts must borrow one from the most analogous state cause of action." *J. Endres v. Northeast Ohio Medical University*, 938 F.3d 281, 292 (6th Cir. 2019). Plaintiff's ADA claim is subject to the three-year statute of limitations that governs personal injury actions in Michigan, M.C.L. § 600.5805. *See Brink v. Allegan County Circuit Court*, No. 1:10-cv-654, 2011 WL 1527806 at *2 (W.D. Mich. April 20, 2011). This three-year limitations period also applies to plaintiff's RA

claim. *See McCormick v. Miami University*, 693 F.3d 654, 662 (6th Cir. 2012) (applying the personal injury statute where the injury took place to an RA claim).

Plaintiff's ADA and RA claims arise from the events which transpired during the summer of 2006. The statute of limitations for these federal claims expired during the summer of 2009. However, plaintiff did not file this lawsuit until June 12, 2019, nearly 10 years after the statute of limitations expired. Based on this record, defendants BCHS and Fieldstone are entitled to summary judgment with respect to plaintiff's ADA and RA claims arising in 2006.[5]

### 2.     State law claims

Defendants BCHS and Fieldstone also seek summary judgment on various state law claims. The Court will address those claims in § VI, *infra*.

### IV.     Review of plaintiff's federal claims pursuant to § 1915(e)(2)(B)(ii)

### A.     Legal standard

The Court allowed plaintiff to file this action *in forma pauperis* pursuant to § 1915. For that reason, it must review the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), which provides that the Court "shall dismiss" actions brought *in forma pauperis* "at any time if the court determines that . . . the action . . . (ii) fails to state a claim on which relief may be granted." In determining whether a complaint should be dismissed for failure to state a claim under § 1915(e)(2), the Court applies the dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007). *See Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).

---

[5] BCHS and Fieldstone point out that "the allegations concerning events in 2018 and 2019 do not concern these defendants." Defendants' Motion (ECF No. 11, PageID.46). In addition, defendants point out that they were purchased by Bronson Health Group effective July 1, 2011, and that the latest allegations arose after the transfer. *Id.*; Restated Articles of Incorporation (ECF No. 11-3). Based on this record, it appears that the allegations from 2018 and 2019 are not directed at defendants BCHA and Fieldstone.

A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests. *Twombly*, 550 U.S. at 555.

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (internal citations and quotation marks omitted).

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). However, "an unadorned, the – defendant - unlawfully – harmed - me accusation" is insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678. While *pro se* pleadings are to be liberally construed, *see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), "this court is not required to conjure up unpled allegations." *Dietz*, 100 Fed. Appx. at 338.

### B. Plaintiff's claims from 2006 directed against defendants Summit Pointe and Summit Pointe South

For the reasons discussed in § III.B.1, *supra*, all of plaintiff's ADA and RA claims from 2006 alleged against all defendants Summit Pointe and Summit Point South are barred by the three-year statute of limitations. Accordingly, plaintiff's ADA and RA claims arising in or before 2006 should be dismissed.

### C. Plaintiff's claims from 2018 and 2019

In his complaint, plaintiff makes cryptic references to events which occurred after 2006 such as: "Defendants have continued to fail to provide accommodations at every appointment. They only provide interpreters occasionally" (PageID.8); that on October 30, 2018, plaintiff asked a member of support staff why there was no interpreter for him, to which the staff member (Tanesha Sanders) responded "I requested one, but no one responded." (PageID.8); that Dr. Gandy did not respond to plaintiff's October 31, 2018 request for a letter regarding his hearing impairment which he needed "for a case before the Michigan Department of Civil Rights" (PageID.8); that plaintiff returned to Summit Pointe South on November 7, 2018 to find out what was happening and was told that "there was a problem" (PageID.8); that plaintiff "had to go to Summit Pointe central office downtown to get a letter" (PageID.8); that Dr. Gandy sent plaintiff a letter on February 28, 2019 (PageID.8); and, that plaintiff "ended up losing the [state civil rights] case because of the incompetence of the Defendants and their failure to accommodate a Deaf Patient/Customer" (PageID.9).

In support of his ADA and RA claims, plaintiff has cited *Silva v. Baptist Health South Florida, Inc.*, 856 F.3d 824 (11th Cir. 2017). In that case, the Eleventh Circuit recognized potential federal claims which could arise from the failure to provide services to deaf patients:

> ADA and RA claims are governed by the same substantive standard of liability. *See, e.g.*, *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000). To prevail, a disabled person must prove that he or she was excluded from participation in or denied the benefits of the hospital's services, programs, or activities, or otherwise was discriminated against on account of her disability. *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001). Such exclusion, denial, or discrimination occurs when a hospital fails to provide "appropriate auxiliary aids and services" to a **deaf** patient, or a patient's **deaf** companion, "where necessary to ensure effective communication." 28 C.F.R. § 36.303(c)(1) (emphases added). That is the touchstone of our inquiry.

> But proving the failure to provide a means of effective communication, on its own, permits only injunctive relief. *See, e.g., McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 n.8 (11th Cir. 2014). To recover monetary damages, a disabled person must further show that the hospital was deliberately indifferent to her federally protected rights. *See, e.g., Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 344, 345 (11th Cir. 2012) (stating that, to recover compensatory damages, a disabled plaintiff must show "that the [h]ospital's failure to provide appropriate auxiliary aids was the result of intentional discrimination" and "deliberate indifference is the appropriate standard for defining discriminatory intent") (internal quotation marks omitted). Resolving the case solely on the ineffective-communication issue, the district court declined to consider deliberate indifference.

*Silva*, 856 F.3d 830-31. *See, e.g., Miller v. Christ Hospital*, No. 1:16-CV-937, 2019 WL 6115211 (S.D. Ohio Nov. 18, 2019) (citing *Silva* in addressing plaintiffs' ADA and RA claims seeking auxiliary aids and services from the defendant hospital).

Here, plaintiff's cursory allegations regarding a few interactions in 2018 and 2019 do not state a claim for relief against any defendant for violation of the ADA or RA due to a failure to provide services to a deaf patient necessary to ensure effective communication. *See Silva*, 856 F.3d 830-31. Accordingly, plaintiff's ADA and RA claims from 2018 and 2019 should be dismissed pursuant to 42 U.S.C. § 1915(e)(2).

### V. Doe defendants

Plaintiff has listed 100 unknown parties, referred to as "Does 1-100". Plaintiff does not allege any action performed by a "Doe" defendant nor any basis for throwing out the apparently arbitrary number of "100" unknown defendants. An unknown or "Doe" defendant listed in a complaint is not a party to a lawsuit. Rather, "Doe defendants are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed." *Hindes v. FDIC*, 137 F.3d 148, 155 (3rd Cir. 1998) (internal quotation and citation omitted). Here, plaintiff's federal claims against the named defendants should be dismissed. Plaintiff has not alleged any cause of

action against a "Doe" defendant and cannot maintain a suit naming only unknown parties. Accordingly, plaintiff's claim against "Does 1-100" should be dismissed.

### VI. State law claims

Plaintiff has alleged state law claims including a violation of the PWDCRA, medical malpractice, and false imprisonment. The Court exercised its supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because those claims appeared to be related to the alleged federal violations. *See* 28 U.S.C. § 1367(a) ("the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy"). The dismissal of plaintiff's federal claims requires the Court to re-examine the issue of supplemental jurisdiction for the state law claims alleged in the complaint. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." Once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892–893 (6th Cir.1998). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556

U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction over plaintiff's state law claims for alleged violations of the PWDCRA, medical malpractice, and false or wrongful imprisonment. While most of these claims are likely barred by a statute of limitations, these claims raise legal issues and involve statutory construction which should be resolved by the state courts. Accordingly, the Court should decline to exercise supplemental jurisdiction over these state law claims.

## VII. RECOMMENDATION

For these reasons, I respectfully recommend that defendants Battle Creek Health Systems and Fieldstone Center's motion for summary judgment (ECF No. 11) be **GRANTED** with respect to plaintiff's ADA and RA claims arising from the 2006 incidents.

I further recommend that plaintiff's ADA and RA claims alleged against defendants Summit Pointe and Summit Pointe South arising from the 2006 incidents be **DISMISSED** pursuant to 42 U.S.C. § 1915(e)(2)(B)(ii).

I further recommend that plaintiff's ADA and RA claims alleged arising from the 2018 and 2019 incidents be **DISMISSED** pursuant to 42 U.S.C. § 1915(e)(2)(B)(ii).

I further recommend that Does 1-100 be **DISMISSED** pursuant to 42 U.S.C. § 1915(e)(2)(B)(ii).

I further recommend that plaintiff's state law claims be **DISMISSED** pursuant to 28 U.S.C. § 1367.

I further recommend that this case be **TERMINATED**.

Dated: February 13, 2020 /s/ Ray Kent
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).